UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 22-CV-00786 (RPK) (RER)

———————————

RICARDO CASTILLO

versus

OCEAN 21, LLC, ET AL.

———————————

**REPORT & RECOMMENDATION**

November 1, 2022

———————————

TO THE HONORABLE RACHEL P. KOVNER
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Ricardo Castillo ("Plaintiff") filed this suit against Ocean 21, LLC (d/b/a Ocean 21 Company) and Eric Silverstein (collectively "Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law §§ 190 and 650 *et seq.* ("NYLL"). (ECF No.1 ("Compl.") at 2). Following a court-referred mediation session, Plaintiff and Defendants reached a settlement. (ECF No. 12-1 ("Agreement")). Plaintiff then filed a Motion for Settlement Approval with the Court. (ECF No. 12 ("Pl.'s Mot.")). Your Honor referred this motion to me for a Report and Recommendation. For the reasons set forth herein, I respectfully recommend that the Court approve the parties' negotiated settlement agreement and grant the Plaintiff's Motion for Settlement Approval.

1

**BACKGROUND**

Plaintiff commenced this lawsuit on February 11, 2022. (Compl.). He alleges that Defendants own, operate, or control a residential building in Brooklyn, New York under the name "Ocean 21 Company" (Compl. ¶ 2), where he worked as a superintendent and porter from approximately January 10, 2008, until on or about January 2020 (*id.* ¶ 4). Plaintiff alleges that during this time, he regularly worked more than 40 hours per week, and Defendants failed to provide him with a proper minimum wage, overtime compensation, or spread of hours pay; failed to provide proper wage notices and statements as required by law; manipulated his paystubs to reflect inaccurate wages and hours; and did not pay him for all the hours he worked. (*Id.* ¶¶ 37–47).

With representation by counsel and with the assistance of a mediator, Plaintiff and Defendants reached an agreement to resolve these claims. (Pl.'s Mot. at 1–2). According to the agreement, Defendants will issue a payment of $24,000 in three installments: one check made payable to Plaintiff's Counsel in the amount of $8,522.66, and two checks made payable to Plaintiff, each in the amount of $7,738.67, for a total of $15,477.34. (Agreement ¶ 1). In exchange, Plaintiff and Defendants—as well as "their agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities"—will be released and discharged from, *inter alia,* any and all related claims under the FLSA, NYLL, and related regulations. (*Id.* ¶ 2). Plaintiff also agrees, *inter alia*, to withdraw or dismiss any outstanding administrative complaints, charges, or other pending lawsuits against the Defendants; and refrain from filing any new administrative or judicial complaints that relate specifically to the claims in this litigation. (*Id.* ¶ 3).

## **DISCUSSION**

Courts must review proposed settlement agreements for fairness pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and determine whether the requested attorneys' fees are reasonable.

**I. Fairness**

The Second Circuit requires that all FLSA settlements be reviewed for fairness. *Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI) (RER), 2021 WL 8316282, at *1 (E.D.N.Y. Nov. 12, 2021). Such a review upholds "the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207.

"There is a strong presumption in favor of finding a proposed FLSA settlement agreement to be fair and reasonable because the Court can never be 'in as good a position as the parties to determine the reasonableness of an FLSA settlement.'" *Cortes v. Bronx Bar & Grill, LLC*, No. 19 Civ. 2819 (SN), 2019 WL 6318430, at *1 (S.D.N.Y. Nov. 25, 2019) (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)); *see also Grijalba v. Metro Rite Laundromat, Inc.*, No. 20-CV-3398 (LB), 2021 WL 8316291, at *2 (E.D.N.Y. Oct. 7, 2021) (quoting *Martinez Aguilar v. VBFS Inc.*, No. 19 Civ. 621 (JLC), 2020 WL 1036071, at *1 (S.D.N.Y. Mar. 3, 2020).

"The ultimate question is whether the proposed settlement reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Mosquera v. Masada Auto Sales, Ltd.*, No. 09-CV-4925 (NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 24, 2011)). "Because *Cheeks* itself did not 'define the contours of the approval

analysis or protocols it envisioned,' district courts within the Second Circuit often turn to the factors set forth in *Wolinsky* to guide their evaluations of whether, under the totality of the circumstances, an FLSA wage and hour settlement is fair and reasonable." *Cortes*, 2019 WL 6318430, at *1 (quoting *Cabrera v. CBS Corp.*, 17 Civ. 6011 (CM) (BCM), 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019)). These factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). Factors that can weigh against approval of a settlement agreement include the following:

> (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."

*Id.* at 336 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

Based on a thorough analysis of the totality of circumstances and the relevant *Wolinsky* factors, I find the proposed settlement agreement to be fair and reasonable under *Cheeks*.

First, the settlement amount reflects reasonable compensation for Plaintiff's claims. Although Plaintiff alleges that a full recovery could total approximately $165,745.70 and that his back wages alone would amount to approximately $28,533.66 (Pl.'s Mot. at 1), Defendants deny Plaintiff's allegations about the number of hours he worked, compensation he received, and job duties he performed (ECF No. 8 ("Answer") at 1–2). Plaintiff recognizes that even if the parties pursued

4

discovery, motion practice, and a trial, due to these contested factual and legal issues, he may not recover the amount he seeks. (Pl.'s Mot. at 1–2); *see Zorn-Hill v. A2B Taxi LLC*, No. 18 Civ. 11165 (KMK), 2020 WL 5578357, at *4–5 (S.D.N.Y. Sept. 17, 2020) (approving settlement amount that is 12.5% of maximum possible recovery when the plaintiff faced factual and legal litigation risks and discussing Second Circuit cases where similar risks resulted in reasonable settlement amounts that were as low as 7% of the plaintiff's potential recovery). Defendants also raised New York's janitorial exemption, which excludes janitors from minimum wage and overtime protections, along with twenty-five other defenses, with which—absent the settlement agreement—all parties would need to contend. (Pl.'s Mot. at 2; Answer at 6–10); *see also Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399–401 (E.D.N.Y. 2014) ("Deciding whether the [janitorial] exemption applies may require the court to consider both questions of fact and law; the question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the overtime provision is a question of law."). Thus, the Plaintiff's release of his FLSA and NYLL claims in exchange for a sum of $24,000 is fair and reasonable.

As relates to the second and third factors, by agreeing to a negotiated settlement of claims, the parties avoid the expense, aggravation, and risk of more protracted litigation. *See Edwards v. Arqenta Inc.*, No. 18 Civ. 5896 (HBP), 2019 WL 4194223, at *2 (S.D.N.Y. Sept. 3, 2019). Given the numerous factual and legal issues in dispute, litigation could be time consuming and costly while plaintiff's recovery would be far from certain. *See id.; see also Alvarez v. Delicias Tropical Rest. Inc.*, No. 20-CV-3224 (LDH) (LB), 2021 WL 7185501, at *3 (E.D.N.Y. May 5, 2021) (finding that "plaintiff's choice to settle this matter is an acknowledgment of the risks of litigation"). Thus, these factors also weigh in favor of approving the settlement agreement.

Fourth, because both parties were represented by counsel throughout the adversarial process, including during the court-ordered mediation session, the parties' settlement agreement reflects the necessary arm's-length negotiation. (Pl.'s Mot. at 2); *see Rodriguez v. Cricket Wireless LLC*, No. 20-CV-1596 (LDH) (RER), 2021 WL 7906565, at *4 (E.D.N.Y. Apr. 20, 2021); *see also Amhaz v. Booking.com (USA) Inc.*, No. 17 Civ. 2120 (GBD) (OTW), 2019 WL 9122944, at *3 (S.D.N.Y. Oct. 29, 2019) ("[T]he result of a private mediation . . . is evidence of an arm's-length negotiation.") *adopted by* 2020 WL 3498264.

Lastly, there is no indication in the record of fraud or collusion influencing the contents or process of the settlement agreement. *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Rodriguez*, 2021 WL 7906565, at *4.

At least two additional factors weigh in favor of approving this agreement. First, because Plaintiff no longer works for Defendants (Compl. ¶ 14), the circumstance is extremely unlikely to recur, *see Gonzalez*, 2021 WL 8316282, at *3; *see also Cortes*, 2019 WL 6318430, at *2 (finding that a plaintiff no longer working for a defendant weighed in favor of fairness because there was less risk of the plaintiff waiving rights for fear of retaliation). Second, the release provision outlined in the agreement is mutual and limited to claims arising solely under the FLSA, NYLL, and related regulations, and other claims "relating specifically to the claims in the Litigation that have occurred as of the date of this Agreement." (Agreement at 2–3). These features make the provision sufficiently narrow in scope. *Gonzalez*, 2021 WL 8316282, at *3; *see also Cortes*, 2019 WL 6318430, at *2 (finding that a mutual release weighed in favor of fairness); *Rodriguez*, 2021

WL 7906565, at *3 (finding that plaintiff's release of wage-related claims that accrued during employment and until the agreement's approval was "sufficiently limited in scope").

All these factors support a finding that the settlement agreement is fair and reasonable.

## II. Attorneys' Fees

Next, the Court must address whether the attorneys' fees provided in the settlement agreement are reasonable. *Wolinsky*, 900 F. Supp. 2d at 336; *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). In doing so, courts in this Circuit commonly consider the proportion of the full award that attorneys' fees comprise. *See, e.g.*, *Rodriguez*, 2021 WL 7906565, at *5 (E.D.N.Y. Apr. 20, 2021). Courts may also consider how the proposed attorneys' fees compare to the lodestar amount, that is, the product of a reasonable hourly rate and a reasonable number of hours worked. *See Durand v. Excelsior Care Grp. LLC*, No. 19-CV-2810 (KAM) (TAM), 2021 WL 5409097, at *5 (E.D.N.Y. July 14, 2021). Regardless of the method courts employ, in "individual FLSA action[s] where the parties settled on the fee through negotiation, there is 'a greater range of reasonableness for approving attorney[s'] fees.'" *Rodriguez*, 2021 WL 7906565, at *5 (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Attorneys' fees of up to one-third of the settlement award are generally deemed reasonable in this Circuit. *Gonzalez,* 2021 WL 8316282, at *3; *see also Cano v. Nineteen Twenty Four, Inc.*, No. 15 Civ. 4082 (RER), 2017 WL 11507654, at *6 (E.D.N.Y. Apr. 24, 2017) (finding one-third of the settlement amount to be "fair and reasonable" and "consistent with the 'trend in this Circuit.'"). However, proportionality is not outcome determinative. *Fisher*, 948 F.3d 593 at 606–07 (noting that "the most critical factor" when courts review a fee award for reasonableness "is the degree of success obtained") (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Moreover, when evaluating reasonableness, the Second Circuit has rejected a one-third limit on attorneys' fees in

FLSA settlements. *Id.* at 602–05 (noting that "fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'") (quoting *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)).

Although the lodestar method generally yields a presumptively reasonable fee, courts routinely approve attorneys' fees above the lodestar amount when justice demands it. *See, e.g.*, *Pinzon v. Jony Food Corp.*, No. 18 Civ. 105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving settlement agreement when attorneys' fees were five times greater than lodestar in recognition of "the importance of encouraging the swift resolution of [FLSA] cases . . . and avoiding 'creat[ing] a disincentive to early settlement' . . . [when] settlement has provided Plaintiff with a substantial and speedy result") (citation omitted); *Cano*, 2017 WL 11507654, at *7 (finding attorneys' fees that are nearly double the counsel's stated lodestar are reasonable and "in line with other cases in the Second Circuit"); *In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617, 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.").

Here, the attorneys' fees proposed in the settlement agreement are reasonable because they comprise approximately one-third of Plaintiff's recovery and the parties are justified in awarding an amount that is higher than the lodestar. At $8,522.66, the proposed fees are more than double Counsel's stated lodestar, which is $3,217.25. (Pl.'s Mot. at 3–4).[1] But this departure is a fair

---

[1] Although the hourly rates for the Litigation Associate ($300) and Paralegal ($125) are on the higher end of those typically approved in this District, they are within the range of what courts in this District have approved. *See Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc.*, No. 17-CV-272 (KAM) (LB), 2019 WL 2526087, at *4 (E.D.N.Y. June 19, 2019) (citations omitted); *see also Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303, 2018

8

recognition of the successful negotiation that spared all parties the costs, time, and risks of litigation. Accordingly, I respectfully recommend that the Court approve the attorneys' fees outlined in the agreement.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court approve the settlement agreement and grant the Plaintiff's Motion for Settlement Approval. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Rachel P. Kovner within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: November 1, 2022
Brooklyn, NY

---

WL 9945754, at *9 (E.D.N.Y. Oct. 17, 2018). Further, an appropriate amount of time was allocated to each task billed, all of which appear essential to achieving a successful outcome for the Plaintiff. (*See* ECF No. 12-3 at 1–2).